1

2

3

4                              UNITED STATES DISTRICT COURT

5                                      DISTRICT OF HAWAII

6                                              * * *

                                                 )        CIVIL NO.  05-00398 PMP-LEK
7    JOYCE MATSUO; SHARON                        )
     WARREN; RONALD FRANKLIN;                    )
8    FRANK HARDT; RUSSELL                         )
     HOLLAND; ROY MATSUO;                        )
9    MICHAEL McCRARY; FRED                       )
     NOLKE; CHARLES ROBERTS;                     )
10   RONALD SCHERLER; ROMAN                      )
     BUYSON; PETER NEWMAN;                       )
11   THOMAS WARREN; JOHN J. KATO;                )
     and MICHAEL C. SHEARER, on                  )
12   behalf of themselves and others             )               ORDER
     similarly situated,                         )
13                                               )
                     Plaintiffs,                 )
14                                               )
      v.                                         )
15                                               )
     THE UNITED STATES, and LINDA                )
16   M. SPRINGER, Director, Office of            )
     Personnel Management,                       )
17                                               )
                     Defendants.                 )
18   _____)

19

20           This is a class action challenging the constitutionality of the Federal

21   Employees Pay Comparability Act of 1990 ("FEPCA"), which provides locality-

22   based comparability pay to federal employees to reduce pay disparities between

23   public and private sector employees performing similar work.  By its terms, FEPCA

24   applies only to federal employees within the contiguous United States and

25   specifically excludes federal employees in Hawaii and Alaska from receiving locality

26   pay.  Plaintiffs are former and current federal employees who work or have

worked in Hawaii or Alaska and therefore did not receive locality pay, or federal employees who work in the contiguous United States and cannot move to Hawaii or Alaska without losing locality pay.

In the First Amended Complaint, Plaintiffs allege the locality pay exclusion for Hawaii and Alaska federal employees is based on state residence and therefore is an unconstitutional restriction on interstate travel in violation of the Equal Protection Clause of the Fifth Amendment to the United States Constitution (count 1). (First Am. Compl. [Doc. #7] at ¶¶ 32-35.) Plaintiffs also allege federal employees have a property interest in their salary, and FEPCA's exclusion of Hawaii and Alaska federal employees from receiving locality pay violates substantive due process under the Fifth Amendment (count 2). (Id. ¶¶ 36-41.) Plaintiffs also asserted two claims regarding cost of living adjustments, but the Court previously dismissed those two claims (counts 3 and 4). Matsuo v. United States, 416 F. Supp. 2d 982, 997-99 (D. Haw. 2006).

Upon the parties' stipulation, the Court certified two classes. (Joint Stip. & Order Regarding Class Certification [Doc. #61].) The first class includes all federal employees in the contiguous United States ("CONUS") who are entitled to locality pay under FEPCA who cannot reside in Alaska or Hawaii and work for the United States without losing locality pay. (Id.) The second class consists of current or former federal employees in Hawaii and Alaska who are or were not eligible for locality pay. (Id.) The parties now cross move for summary judgment.

**I. BACKGROUND**

By Executive Order in 1948, federal employees in Hawaii and Alaska became eligible to receive compensation in addition to their base pay due to living costs that were substantially higher than living costs in the District of Columbia. See Exec. Order No. 10,000, 13 Fed. Reg. 5453, 5455 (Sept. 18, 1948). Congress

subsequently codified this cost of living allowance ("COLA") for federal employees in Hawaii, Alaska, and other non-foreign areas outside the continental United States. See Pub. L. 89-554, 80 Stat. 512, 513 (1966), 5 U.S.C. § 5941(a). As of September 2007, Hawaii and Alaska federal employees received COLAs ranging between 17% and 25% of their base pay, with most areas at or near the statutory cap of 25% of base pay. See 5 C.F.R., Part 591, Subpart B, App. A; 5 U.S.C. § 5941(a). COLA payments are not considered part of base pay, and therefore these employees may not make retirement contributions based on COLA payments and the COLA payments are not included in calculating the employees' retirement annuities. 5 C.F.R. § 591.239(b). The COLA payments are not subject to federal income tax. 26 U.S.C. § 912(2).

In 1990, Congress enacted FEPCA, under which federal employees would receive comparability payments, or "locality pay," designed to reduce and eventually eliminate pay disparities between federal and non-federal employees performing similar work. 5 U.S.C. § 5301, § 5304. FEPCA directs the President of the United States to designate an agent to prepare annual reports comparing pay rates for federal employees under the General Schedule with pay rates for non-federal workers for the same work within a pay locality based on surveys prepared by the Bureau of Labor Statistics. 5 U.S.C. § 5304(d)(1). Based on the surveys, the designated agent must identify those localities in which a pay disparity greater than five percent exists, and make recommendations for comparability payments. Id. § 5304(a)(1), § 5304(d)(1)(B)-(C). The procedures include participation by the Federal Salary Council, which may submit its collective or individual members' views and recommendations. Id. § 5304(d)(1)(D), § 5304(e). The Executive Branch then must provide for or adjust comparability pay in conformity with the findings and transmit a report to Congress identifying each pay locality, specifying which pay localities

have a pay disparity greater than five percent, and indicating the locality pay for the applicable calendar year.  Id. § 5304(d)(2)-(3).

Currently, thirty-two locality payment areas have been identified and locality pay percentages set based primarily on the pay disparity between federal and non-federal employees performing similar work in a given locality.  5 U.S.C. § 5301(3), § 5302(6), § 5304(a), (d), & (f); 5 C.F.R. §§ 531.603 & 531.604.  For 2007, locality payments ranged from a low of 12.64% of base pay for the locality designated as the "Rest of U.S.," to a high of 30.33% for "San Jose-San Francisco-Oakland, California."  Exec. Order No. 13,420, 71 Fed. Reg. 77,571, 77,580 (Dec. 26, 2006).  Locality pay constitutes part of an employee's base pay and is included in calculating retirement contributions and annuities.  5 U.S.C. § 5304(c)(2). Retirement benefits under the Federal Employees Retirement System are calculated in large part based on the average of an employee's highest three consecutive years of base pay.  5 U.S.C. § 8331(4), § 8339.  The provision exempting the COLA from federal income tax does not apply to locality pay and locality pay therefore is subject to federal income tax.  26 U.S.C. § 912.

All federal employees employed within the continental United States are entitled to receive locality pay.  5 U.S.C. § 5304(f)(1)(a).  However, FEPCA specifically excludes federal employees in Hawaii and Alaska from receiving locality pay.  See 5 U.S.C. § 5304(f)(1)(A); 5 U.S.C. § 5701(6).  The legislative history is silent as to why Congress chose to exclude Hawaii and Alaska employees from receiving locality pay.

As a result of locality pay, but not COLA, being included in calculating retirement contributions and annuities, FEPCA's exclusion of Hawaii and Alaska employees means these employees are not able to contribute as much to their retirement as similarly situated CONUS employees.  Additionally, Hawaii and

Alaska employees' base pay for determining their highest three years for calculating their retirement annuities is less than similarly situated CONUS employees who receive locality pay.  However, Hawaii and Alaska employees' COLA is exempt from federal income tax while CONUS employees' locality pay is subject to federal income tax.

Since FEPCA's enactment, FEPCA's exclusion of Hawaii and Alaska federal employees has influenced federal employees' decisions about whether to move from these states to CONUS to receive locality pay.  As reflected in Plaintiffs' affidavits, federal employees in Hawaii or Alaska consider moving or in fact have moved to federal positions in CONUS to receive locality pay, particularly as they near retirement.  (Pls.' Mot. for Summ. J. [Doc. #82], Decls. of Charles H. Roberts, Frank A. Hardt, Fred Nolke, John J. Kato, Joyce K. Matsuo, Michael R. McCrary , Roman J. Buyson, Roy T. Matsuo ("Roy Matsuo Decl."), Russell F. Holland, Thomas C. Warren, Michael C. Shearer, Peter M. Newman, and Sharon E. Warren; see also Pls.' Opp'n to Defs.' Mot. for Summ. J., Decl. of Ronald W. Scherler.)

For example, Plaintiff Roy Matsuo ("Matsuo") began working as a GS-5 Office Automation Assistant in Hawaii in 2000.  (Roy Matsuo Decl. at 1.)  By 2005, he was a GS-12 Contract Specialist.  (Id. at 2.)  Matsuo decided that to improve his retirement benefits, he would transfer to a position in CONUS to increase his highest three consecutive years of base pay by taking a position that included locality pay in his base pay.  (Id. at 2.)  Matsuo therefore transferred to San Diego, California, where he received locality pay of approximately 16%.  (Id.)  To make this transfer, Matsuo had to leave behind his elderly parents who required a great deal of care and his wife who cared for Matsuo's parents in Hawaii during his absence.  (Id.)  The separation strained Matsuo's relationships with his wife and his parents, and after seventeen months, Matsuo returned to Hawaii.  (Id. at 2-3.)  Matsuo avers that he

would like to retire within the next five years, but because he lives in Hawaii and does not receive locality pay, his retirement benefits will be significantly less than those of a comparably situated GS-12 Contract Specialist in CONUS who receives locality pay.  (Id. at 3-4; see also other employee affidavits for similar averments regarding plans to move to CONUS to receive locality pay, particularly as employees near retirement.)

FEPCA's impact on federal employees and their decision making has not gone unnoticed by Defendant Office of Personnel Management ("OPM").  In July 2001, OPM prepared a draft options paper on Pay and Retirement Benefits for White-Collar Civilian Federal Employees Outside the Continental U.S. ("Options Paper").  (Pls.' Opp'n to Defs.' Mot. for Summ. J., Ex. N.)  In the Options Paper, OPM noted, "Over the past 7 years, the total pay and retirement benefits of white-collar civilian Federal employees outside the continental U.S. (OCONUS) have eroded gradually in relation to the pay and retirement benefits of similarly situated employees in the continental U.S. (CONUS)."  (Id.)  The Options Paper notes this shift began in 1994, when FEPCA's provisions first were implemented.  (Id.)  The Options Paper acknowledges that because locality pay is included in retirement calculations, "the introduction of locality pay for CONUS employees puts OCONUS employees at a life-long disadvantage with regard to their retirement income."  (Id.)

The Options Paper notes that although OCONUS employees receive COLAs, "many OCONUS employees perceive a serious and growing inequity between the pay and retirement benefits of CONUS and OCONUS employees."  (Id.)  The Options Paper also indicated that "many OCONUS managers believe actual or perceived disparities between the pay and retirement benefits of CONUS and OCONUS employees create staffing problems in OCONUS areas, especially for employees near retirement."  (Id.)  According to the Options Paper, the State

Department noted that "many senior level employees plan ahead and arrange to be stationed in the DC area for their final tour (in order to receive the benefit of DC locality pay in the calculation of their retirement annuity)." (Id.)  Additionally, "[o]ther Federal agencies with large numbers of OCONUS employees also expect to encounter OCONUS staffing problems in the future if nothing is done to address actual or perceived disparities between the pay and retirement benefits of CONUS and OCONUS employees."  (Id.)

The Options Paper suggested three options to address these problems, and recommended adopting an option which extended locality pay to Hawaii and Alaska employees while eliminating the COLA, but freezing current COLA rates to protect employees' take home pay.  (Id.)  The Options Paper suggested funding locality pay to OCONUS employees by reducing CONUS locality pay.  (Id.)  The Options Paper noted that the most serious objection to this option likely would come from CONUS employees, however,

> CONUS employees have received slightly higher locality payments since 1994 by virtue of the fact that the total amount of money available for such payments has been calculated as a percentage of the total payroll for all GS employees, including OCONUS employees.  In effect OCONUS employees have "subsidized" locality payments for CONUS employees for the last 7 years.  The proposal outlined above, therefore, is designed to create a level playing field for CONUS and OCONUS employees without substantially increasing overall payroll and retirement costs.

(Id. at 7.)

OPM also acknowledged these problems in a February 2003 Senate briefing.  (Pls.' Mot. for Summ. J., Ex. G.)  In the briefing, OPM noted that "[r]etirement benefits of white-collar civilian Federal employees stationed outside the continental U.S. are lower compared with their counterparts' benefits in the continental United States (CONUS)."  (Id.)  OPM identified FEPCA's exclusion of

7

Hawaii and Alaska from locality pay as the reason for this disparity, and indicated this "cause[s] actual and potential staffing problems in foreign and nonforeign areas, especially for employees near retirement." (Id.)  OPM further indicated that "[b]ase pay of COLA area employees is not keeping pace with [District of Columbia] locality pay." (Id.)

In October 2007, the Federal Salary Council issued a memorandum regarding the Level of Comparability Payments for January 2009 and Other Matters Pertaining to the Locality Pay Program.  (Pls.' Opp'n to Defs.' Mot. for Summ. J., Ex. M.)  The Federal Salary Council indicated the Bureau of Labor Statistics conducted salary surveys in Anchorage, Alaska and Honolulu, Hawaii, and determined "the pay gap between GS and non-Federal pay in Anchorage is 54.96 percent and the pay gap in Honolulu is 41.72 percent.  Both are well above the 29.64 percent pay gap in the Rest of U.S. locality pay area." (Id. at 9.)  The Federal Salary Council also noted that the Administration recently proposed legislation to gradually replace the COLA with locality pay.  (Id. at 8-9.)

Plaintiffs brought a class action in this Court asserting FEPCA's exclusion of Hawaii and Alaska federal employees violates the Equal Protection Clause of the Fifth Amendment to the United States Constitution.  Plaintiffs also assert federal employees have a property interest in their salary, and FEPCA's arbitrary exclusion of Hawaii and Alaska federal employees from receiving locality pay violates substantive due process under the Fifth Amendment.  The parties now cross move for summary judgment.  Plaintiffs contend that because FEPCA affects employees' fundamental right to interstate travel by penalizing federal employees who move to Hawaii or Alaska, FEPCA's exclusion of Hawaii and Alaska employees is subject to strict scrutiny.  Plaintiffs also argue the exclusion violates the Privileges and Immunities Clause because the federal government is making a benefits distinction

based solely on an employee's state of residence, which also subjects the statute to strict scrutiny review.  Plaintiffs further argue that under strict scrutiny review, Defendants cannot show the exclusion is narrowly tailored to serve a compelling governmental interest.  Moreover, Plaintiffs argue that even if the statute is subject to rational basis review, the statute lacks a rational basis to support the exclusion's constitutionality.

Defendants argue FEPCA does not impinge on any of the recognized aspects of the right to interstate travel, and therefore only rational basis review applies.  Defendants suggest several rational justifications exist for the exclusion. For example, Defendants argue that because Hawaii and Alaska employees receive the tax-free COLA, Congress may have concluded these employees need not be included in the locality pay program.  Defendants also argue Congress may have been motivated by an interest in limiting federal spending or by legislative convenience in not revising the COLA system.  Finally, Defendants argue Congress rationally could have decided locality pay was unnecessary to recruit and retain employees in Hawaii and Alaska.  With respect to the Privileges and Immunities Clause, Defendants argue Plaintiffs did not raise this claim in the First Amended Complaint.  On the merits of the claim, Defendants argue the Clause applies only to the several States, and not to the federal government.  Finally, Defendants note that Plaintiffs have abandoned their substantive due process claim in count two of the First Amended Complaint.

## II. EVIDENTIARY OBJECTION

Defendants offer as evidence of Congress's purpose in excluding Hawaii and Alaska from FEPCA an OPM memo dated January 1991 in which the Associate Director for Personnel Systems and Oversight stated Hawaii and Alaska "were intentionally excluded from FEPCA because congressional staff repeatedly asked for

assurance that the COLA program would not be touched as party of pay reform."

(Defs.' Mot. for Summ. J. [Doc. #80], Ex. 11 at 8.)  Defendants also present a May

1994 letter from Alaska Senator Ted Stevens and Hawaii Senator Daniel K. Inouye

to the Director of OPM in which the Senators stated, "We are absolutely convinced

that the standard locality pay program as applied in the continental United States

cannot be fairly applied to our two states, given their high cost of living, remoteness,

isolation, and other unique characteristics."  (Defs.' Mot. for Summ. J., Ex. 12.)  The

Senators also stated they believed "there is some value in comparing the effect and

operation of the locality pay and COLA programs."  (Id.)  The Senators suggested

the Bureau of Labor Statistics conduct locality pay surveys in Hawaii and Alaska "so

that the relationship, if any, between the locality pay program and the COLA

program can be explored."  (Id.)

     Plaintiffs object to this evidence.  Plaintiffs note the 1991 memo was

written by an OPM employee, not a congressional representative, after FEPCA was

enacted.  The 1991 memo thus is the employee's out of court statement which further

contains an additional layer of unidentified congressional staffers' alleged out-of-

court statements.  Plaintiffs also argue the 1994 letter by the Senators was written

after FEPCA's enactment and thus has little, if any, relevance to legislative intent at

the time of FEPCA's enactment.  Further, Plaintiffs argue the 1994 letter does not

suggest Hawaii and Alaska opted out of the locality pay program.  Rather, the letter

indicates the Senators believed applying the locality pay system to their states

required research and further analysis, including an examination of the relationship

between the locality pay program and COLAs.

     The Court finds the 1991 memo and the 1994 letter have  no relevance to

the issues before the Court.  The 1991 memo was written after FEPCA's enactment

by an OPM employee who mentions out-of-court statements by unidentified

congressional staffers.  The Senators' letter was written in 1994, four years after

FEPCA's enactment, by two Senators.  Remarks by only two legislators, statements

by unidentified congressional staffers, and after the fact statements are of little

relevance to demonstrate congressional rationale at the time of FEPCA's enactment.

Further, the 1994 letter does not state the exclusion in FEPCA was due to any

particular policy choice by Congress.  The Court therefore will not consider the 1991

memo or the 1994 letter in reviewing FEPCA's constitutionality.

## III.  MERITS

### A.  Substantive Due Process (count two)

Count two of Plaintiffs' First Amended Complaint alleges federal

employees have a property right in their salary.  Plaintiffs allege that federal

employees working in CONUS and receiving locality pay who are transferred to a

federal job in Hawaii or Alaska lose their locality pay.  Plaintiffs argue this

deprivation of locality pay violates substantive due process under the Fifth

Amendment to the Constitution.

Defendants move for summary judgment on this claim, arguing Plaintiffs

cannot show federal employees have a property interest in future locality pay.  In

their papers, Plaintiffs did not respond to Defendants' arguments regarding count

two's substantive due process claim, and at the hearing in this matter, Plaintiffs

conceded Defendants were entitled to summary judgment on count two.

"The substantive component of the Due Process Clause forbids the

government from depriving a person of life, liberty, or property in such a way that

. . . interferes with rights implicit in the concept of ordered liberty."  Engquist v.

Oregon Dep't of Agric., 478 F.3d 985, 996-97 (9th Cir. 2007) (quotation omitted).

To establish a substantive due process claim, a plaintiff first must show a

constitutionally-protected liberty or property interest.  Id.  To have a property

1   interest, an individual must have "a reasonable expectation of entitlement deriving

2   from existing rules or understandings that stem from an independent source such as

3   state law." Stiesberg v. State of Cal., 80 F.3d 353, 356 (9th Cir. 1996). The

4   language of the relevant source of law and the extent to which it expresses the

5   alleged entitlement in mandatory terms inform whether an individual has a

6   reasonable expectation of entitlement. Id.

7        Here, a federal employee could not have a reasonable expectation of

8   entitlement to locality pay in Hawaii or Alaska because FEPCA specifically

9   precludes locality pay in those locations. Consequently, any employee working or

10  transferring to these states would have no reasonable expectation of locality pay.

11  Furthermore, while a federal employee has a property interest in payment of wages

12  for services already performed, Congress may reduce prospectively federal

13  employees' pay. United States v. Larionoff, 431 U.S. 864, 879 (1977). Because

14  Congress could abolish locality pay tomorrow for all future pay, federal employees

15  have no property interest in prospective payment of locality pay. Plaintiffs concede

16  they are not entitled to relief on their substantive due process claim. The Court

17  therefore will grant summary judgment in Defendants' favor on count two of the

18  First Amended Complaint.

19       **B. Equal Protection (count one)**

20       The Fourteenth Amendment commands that no State shall "deny to any

21  person within its jurisdiction the equal protection of the laws." U.S. Const. amend.

22  XIV, § 1. The Fourteenth Amendment's Equal Protection Clause applies to the

23  federal government through the Fifth Amendment's Due Process Clause. Cordes v.

24  Gonzales, 421 F.3d 889, 896 (9th Cir. 2005). A statute triggers equal protection

25  analysis when it treats "similarly situated persons disparately." Silveira v. Lockyer,

26  312 F.3d 1052, 1088 (9th Cir. 2002). FEPCA on its face distinguishes between

federal employees in Hawaii and Alaska and CONUS federal employees, and results in Hawaii and Alaska employees being treated differently in terms of not receiving locality pay with the attendant effects on retirement contributions and annuities. Plaintiffs therefore have shown FEPCA triggers equal protection review.

To decide whether a law violates the Equal Protection Clause, the reviewing court first must determine the appropriate level of scrutiny to apply. Giannini v. Real, 911 F.2d 354, 358 (9th Cir. 1990). Once the appropriate level of review is determined, the Court analyzes the governmental interests involved to determine whether the challenged statute survives review. Dunn v. Blumstein, 405 U.S. 330, 343-60 (1972).

1. Level of Review

When the challenged statute burdens a fundamental right or targets a suspect class, the statute is subject to strict scrutiny and must be "'suitably tailored to serve a compelling state interest.'" Silveira, 312 F.3d at 1087-88 (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1986)); Romer v. Evans, 517 U.S. 620, 631 (1996). If the statute "neither affects the exercise of a fundamental right, nor classifies persons based on protected characteristics," then that statute is subject to rational basis review and "will be upheld 'if the classification drawn by the statute is rationally related to a legitimate state interest.'" Silveira, 312 F.3d at 1088 (quoting Schweiker v. Wilson, 450 U.S. 221, 230 (1981)).

It is clear no suspect classification is at issue here and Plaintiffs do not argue they belong to a suspect class. Rather, Plaintiffs argue FEPCA violates equal protection by drawing an unconstitutional distinction between federal employees based on their state of residence which burdens their fundamental right to travel under the Fifth Amendment's Due Process Clause. Although not expressly set forth in the Constitution, the right to interstate travel is a fundamental constitutional right.

Saenz v. Roe, 526 U.S. 489, 498-99 (1999); Shapiro v. Thompson, 394 U.S. 618, 634 (1969), overruled on other grounds by Edelman v. Jordan, 415 U.S. 651 (1974); United States. v. Guest, 383 U.S. 745, 757-58 (1966).  The Supreme Court has not always identified the source of this right, sometimes referring to the federal character of our nation and historical context, the Fourteenth Amendment, the Fifth Amendment's Due Process Clause, Article IV's Privileges and Immunities Clause,[1] and the Commerce Clause.  See Saenz, 526 U.S. at 500-03; Guest, 383 U.S. at 759; Shapiro, 394 U.S. at 630 n.8.

Although most cases involving the right to travel have involved challenges to state statutes, the right to travel also limits the national government's powers.  As the Supreme Court noted in Saenz, Congress may not authorize the States to violate the right to travel as expressed in the Fourteenth Amendment, and furthermore "the protection afforded to the citizen by the Citizenship Clause of that Amendment is a limitation on the powers of the National Government as well as the States."  526 U.S. at 507-08; see also Kent v. Dulles, 357 U.S. 116, 125 (1958) (stating, in a case involving the right to international travel, that the right to travel is a "part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment").  The Court therefore rejects Defendants' argument that the right to travel does not apply to the national government.  The Supreme Court has indicated the right to travel is a limitation on the national government's power, and the sources of the recognized right to travel--the federal character of the nation, the citizenship clause of the Fourteenth Amendment, and the Fifth Amendment's due process clause--apply to the national government as well as the

---

[1] As the Court clarified at the hearing on these motions, Plaintiffs' argument related to Article IV's Privileges and Immunities Clause is a component of Plaintiffs' right to travel and equal protection claim, and Plaintiffs do not attempt to assert an independent claim under Article IV.

states.

Furthermore, it would be anomalous if the national government was prohibited from empowering the several states to interfere with the right to travel but it could impair the right itself directly.  It also would be incongruous if the national government was bound to respect the lesser constitutional liberty of international travel, but would be free to set up barriers to the "virtually unqualified" right to interstate travel.  See Haig v. Agee, 453 U.S. 280, 307 (1981) ("The constitutional right of interstate travel is virtually unqualified.  By contrast the 'right' of international travel has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment.  As such this 'right,' . . . can be regulated within the bounds of due process."); Zemel v. Rusk, 381 U.S. 1, 13-14 (1965) (reviewing federal passport restrictions on travel to Cuba; Aptheker v. Secretary of State, 378 U.S. 500, 514 (1964) (reviewing federal passport restrictions on communists).

Because the right to travel applies to the national government, the Court next must determine whether FEPCA implicates the right sufficiently to trigger strict scrutiny review.  The Supreme Court has articulated "at least" three recognized aspects of the right to interstate travel:

> [T]he right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.

Saenz, 526 U.S. at 500.

Plaintiffs' challenge to FEPCA does not fit within any of the three recognized components of the right to travel.  First, FEPCA does not directly impair the exercise of the right of free ingress and regress to and from neighboring states.  Compare Edwards v. California, 314 U.S. 160 (1941) (invalidating a California

statute making it a misdemeanor to bring an indigent person into the state) with Saenz, 526 U.S. at 501 (concluding state statute imposing durational residency requirement on receiving welfare benefits did not impair free movement between the states under the first component of the right to travel).  Plaintiffs own affidavits demonstrate Plaintiffs have been able to move freely between the states.

FEPCA also does not implicate the second component of the right to travel. FEPCA makes no distinction between temporary visitors and permanent residents, and it treats all persons within a particular state the same.  Finally, FEPCA does not implicate the third component of the right to travel which permits the newly arrived citizen to the enjoy the same privileges and immunities other citizens of the same State enjoy.  FEPCA does not implicate this third prong because FEPCA treats all persons within a particular state the same, whether newly arrived or long time residents.

Even if the right to travel's contours extend beyond these three components, the Supreme Court has made clear that the type of claim Plaintiffs assert here is not protected by the right to travel.  First, it is not the act of traveling that triggers the exclusion.  Whether one recently arrived to Hawaii or lived there his entire life, he still is not entitled to locality pay.  FEPCA's exclusion of Hawaii and Alaska federal employees from locality pay therefore does not penalize "those persons, and only those persons, who have exercised their constitutional right of interstate migration."  Dunn, 405 U.S. at 339-342 & n.12 (giving an example of an interstate migrant losing his driver's license because the new State has a higher age requirement, but stating such a situation does not raise a right to travel issue because the new state's age requirement "is not a penalty imposed solely because the newcomer is a new resident; instead, all residents, old and new, must be of a prescribed age to drive.").

For those federal employees who have exercised their right to travel to Hawaii or Alaska, or were deterred by FEPCA from doing so, the Supreme Court expressly has rejected the proposition that the right to interstate travel includes the right to receive the same level of benefits in the citizen's new state as the citizen enjoyed in the former state of residence. In <u>Califano v. Gautier Torres</u>, the Supreme Court upheld the constitutionality of an amendment to the Social Security Act making Supplemental Security Income ("SSI") benefits payable only to residents of the United States, defined as the fifty States and the District of Columbia. 435 U.S. 1, 1-5 (1978). The amendment specifically excluded persons in Puerto Rico from being eligible for SSI benefits. <u>Id.</u> at 2. The plaintiffs received SSI benefits while residing in one of the fifty states, but the benefits were discontinued when they moved to Puerto Rico. <u>Id.</u> at 2-3.

In considering the plaintiffs' argument that the cessation of benefits upon their move to Puerto Rico violated their right to travel, the Supreme Court cited prior case law for the proposition that "laws prohibiting newly arrived residents in a State or county from receiving the same vital benefits as other residents unconstitutionally burden[] the right of interstate travel." <u>Id.</u> at 4. However, the Supreme Court held that by invalidating the exclusion of persons in Puerto Rico from receiving SSI benefits, the district court:

> altogether transposed that proposition. It held that the Constitution requires that a person who travels to Puerto Rico must be given benefits superior to those enjoyed by other residents of Puerto Rico if the newcomer enjoyed those benefits in the State from which he came. This Court has never held that the constitutional right to travel embraces any such doctrine, and we decline to do so now.[footnote omitted] Such a doctrine would apply with equal force to any benefits a State might provide for its residents, and would require a State to continue to pay those benefits indefinitely to any persons who had once resided there. And the broader implications of such a doctrine in other areas of substantive law would bid fair to destroy the independent power of each State under our Constitution to enact

laws uniformly applicable to all of its residents.

Id. at 4-5; Cf. Fisher v. Reiser, 610 F.2d 629, 631 (9th Cir. 1979) (upholding under rational review a Nevada workers' compensation law granting cost-of-living increases to beneficiaries who continued to reside in Nevada, but denying the increased benefits to beneficiaries residing outside Nevada). In making this determination, the Supreme Court assumed the plaintiffs enjoyed the "virtually unqualified" constitutional right to interstate travel when they traveled between Puerto Rico and any of the fifty States, rather than the liberty interest in international travel. Id. at 5 n.6.

Califano rejected the proposition that the right to interstate travel requires the federal government to provide to a citizen all federal benefits for which he was eligible by reason of his residence in one state when that citizen moves to another state within which he becomes ineligible for the federal benefit. Consequently, the fact that a federal employee may receive locality pay in one state of residence and lose that locality pay when he moves to Hawaii or Alaska does not burden the right to interstate travel. Because FEPCA does not burden a fundamental right, rational basis review applies.

2.  Rational Basis Review

Under rational review, there must be "some rational connection between the state's objective for its legislative classification and the means by which it classifies its citizens." Silveira, 312 F.3d at 1088; Heller v. Doe, 509 U.S. 312, 320-21 (1993). The legislature need not actually articulate the supporting rationale, and the record need not contain empirical evidence supporting the classification, so long as the legislative choice is reasonable. Silveira, 312 F.3d at 1089; Heller, 509 U.S. at 320. The challenged statute is presumptively constitutional and the party attacking the statute bears the burden of negating "every conceivable basis which

might support it . . . whether or not the basis has a foundation in the record." <u>Heller</u>, 509 U.S. at 320-21 (quotation and internal citation omitted).

"[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." <u>Id.</u> at 320 (quotation omitted).  Instead, the party challenging the statute must demonstrate that "the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." <u>Vance v. Bradley</u>, 440 U.S. 93, 111 (1979).  Further, the statute need not employ a perfect fit between means and ends. <u>Heller</u>, 509 U.S. at 321.  A statutory classification does not violate the Equal Protection Clause "simply because the classification is not made with mathematical nicety or because in practice it results in some inequity." <u>Schweiker</u>, 450 U.S. at 234 (quotation omitted).

The rational basis test is a "relatively relaxed" standard in recognition of Congress's role as "the appropriate representative body through which the public makes democratic choices among alternative solutions to social and economic problems." <u>Silveira</u>, 312 F.3d at 1088; <u>Schweiker</u>, 450 U.S. at 230.  In such circumstances, the Constitution presumes the democratic process eventually will correct improvident decisions. <u>City of Cleburne</u>, 473 U.S. at 440.  Although the rational basis test is deferential, it is not "toothless." <u>Id.</u> (quotation omitted).  A link between the classification and the governmental objective must exist. <u>Romer</u>, 517 U.S. at 632.

Defendants offer four rational bases for upholding FEPCA:  (1) Congress rationally could have decided Hawaii and Alaska employees did not need locality pay because they received the tax-free COLAs; (2) to conserve the public fisc; (3) "legislative convenience"; and (4) Congress could have decided locality pay was not needed to recruit and retain employees in Hawaii and Alaska.  Plaintiffs argue none

of these bases are rational.  As to the COLA, Plaintiffs argue the COLA is aimed at cost of living, not pay disparities between public and private sector employees. Plaintiffs note that the COLA is determined based on different factors than locality pay, which further demonstrates these two supplements are aimed at remedying different problems.  Plaintiffs therefore argue Congress could not rationally have determined COLAs would address the private and public pay disparity that FEPCA was designed to address.  As to conserving the public fisc, Plaintiffs argue Congress cannot rationally decide to burden employees in two states with pay disparities in the name of conserving public resources.  As to legislative convenience, Plaintiffs contend Defendants do not really explain what they mean by this.  Finally, Plaintiffs contend recruitment and retention are not FEPCA's goals; reducing public and private sector pay disparities are, and thus recruitment and retention issues are not rationally related to the statutory exclusion in FEPCA.  Plaintiffs also argue no evidence in the record supports the conclusion that no such pay disparity existed in Hawaii and Alaska.

Like Plaintiffs, the Court is puzzled by the legislative anomaly that here operates to the life-long disadvantage of federal employees in the excluded states. For example, FEPCA does not state that it will exclude from its coverage any pay locality eligible for a COLA.  Rather, it excludes Hawaii and Alaska by name. Indeed, if Congress abolished COLAs, Hawaii and Alaska federal employees still would be excluded from FEPCA's coverage because the statute's classification is defined by state residence, not the receipt of COLAs.

Further, Hawaii and Alaska employees have received COLAs since the 1940s, long before FEPCA's enactment, due to increased living costs.  The COLA purportedly is aimed at ensuring Hawaii and Alaska employees have comparable buying power as federal employees in Washington D.C.  Consequently, prior to

FEPCA's enactment, federal employees in Hawaii and Alaska were on the same level as federal employees in Washington D.C.  However, FEPCA gives federal employees in Washington D.C. an additional supplement to base pay in the form of locality pay that it does not give to federal employees in Hawaii and Alaska.  This historical context calls into question Defendants' argument that COLA is a tradeoff for FEPCA's locality pay.

That COLA is not simply a substitute for FEPCA's locality pay is further demonstrated by the fact that the two pay supplements are aimed at remedying different compensation issues, and are calculated differently as well.  Nothing about the COLA's purpose or manner of calculation suggests a nexus between the COLA and the reduction of a pay disparity between public and private sector compensation in Hawaii and Alaska.

Additionally, federal employees' state of residence bears no rational relationship to excluding them from locality pay to conserve the public fisc.  See Saenz, 526 U.S. at 507.  Neither do Defendants adequately explain what they mean in arguing Congress could have been motivated by "legislative convenience" in the context of this case.  Vance v. Bradley, 440 U.S. 93, 109 (1979).

Notwithstanding these weaknesses in the arguments advanced by Defendants, when applying the rational basis test, the Court is guided by the Supreme Court's admonition that:

> rational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices'. . . .  Nor does it authorize 'the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines . . . a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity [and] must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

Heller, 509 U.S. at 319-20 (internal citations omitted).  Under this standard, the Court finds Plaintiffs have not met their burden of overcoming the presumption that FEPCA is constitutional and showing FEPCA's exclusion of Hawaii and Alaska employees was not rationally related to a legitimate governmental interest at the time it was enacted.

Congress has a legitimate interest in creating and managing compensation packages for its employees to compensate employees adequately, to recruit and retain employees, and to allocate limited resources among employees.  That Congress may have discharged its legislative responsibilities imperfectly does not give this Court fiat to rewrite the legislation to rectify the current disparity.  It suggests strongly instead that Congress should correct the incongruity made so evident by this case.

FEPCA excludes from the locality pay system only those two states in which federal employees also receive the tax free COLA.  At the time FEPCA was enacted, Hawaii and Alaska employees received COLA pay allowances up to 25% of their base salary.  Congress rationally could have decided employees who received this tax free allowance did not also need to receive locality pay.

The statistics regarding pay gaps as recently compiled by the Bureau of Labor Statistics supports this conclusion.  The Bureau compared the General Schedule pay rate to non-federal pay rates, and consequently the statistics in the report do not include either COLAs or locality pay.  (Pl.'s Opp'n, Ex. M at 1.)  According to the report, the pay gap between General Schedule salaries and non-federal salaries in Washington D.C. in March 2006 was 61.64%.  (Id., Ex. M Attach. 1.)  The same report shows Honolulu had a pay gap of 41.72% and Anchorage had a pay gap of 54.96%.  (Id.)  When locality pay is included, Washington D.C.'s pay gap drops to 43.05% (61.64% minus 18.59% locality pay).

See Exec. Order 13420, 71 Fed. Reg. 77,571, 77,580 Sched. 9.  When COLAs are included, Honolulu's pay gap drops to 16.72% (41.72% pay gap minus 25% COLA) and Anchorage's pay gap drops to 30.96% (54.96% pay gap minus 24% COLA), not including any further reduction in the pay gap given the COLA's tax-free status.  The pay disparities after factoring in COLAs in Honolulu and Anchorage are in line with other CONUS areas after factoring in locality pay.  Atlanta, Boston, Buffalo, Chicago, Dallas, Hartford, Los Angeles, Minneapolis, New York, Philadelphia, Phoenix, Sacramento, and San Diego also had greater than 20% disparity even after including locality pay.  San Francisco had over a 30% private versus public pay disparity even after factoring in locality pay.  (Compare Pls.' Opp'n, Ex. M, Attach 2 with Sched. 9.)

Although FEPCA and COLAs may be directed at different aims, Congress need not act with mathematical precision, and a statute need not have a perfect fit between ends and means.  When FEPCA was enacted, Congress rationally could have concluded the two pay supplements were roughly parallel, even if it has turned out, in practice, that FEPCA's exclusion has worked to the disadvantage of Hawaii and Alaska employees with respect to their retirement benefits.

FEPCA also survives rational basis review under the related reason that Congress rationally may have determined locality pay was not needed in these states to recruit and retain employees.  FEPCA's policy of pay equalization between the public and private sector is related to recruitment and retention of employees, for the federal government would have difficulty recruiting and retaining quality employees if federal employment did not offer competitive compensation.  Although Plaintiffs argue no evidence in the record shows Congress rationally could have concluded locality pay was unnecessary in Hawaii and Alaska, Plaintiffs cannot rely on a lack of evidence supporting Congress's decision.  On rational basis review, Plaintiffs bear

the burden of showing Congress could not reasonably have conceived locality pay was unnecessary to recruit and retain employees in Hawaii and Alaska.  Plaintiffs have presented no evidence the federal government had difficulty recruiting or retaining employees in Hawaii and Alaska at the time of FEPCA's enactment. Plaintiffs therefore have not met their burden of negating every conceivable rational basis for the exclusion.

FEPCA's exclusion reflects a policy choice by the politically accountable branches of government.  While the Court acknowledges the inequities resulting from Plaintiffs' exclusion from the locality pay system, the proper venue for resolving the issue remains with Congress.

Because FEPCA is supported by a rational basis, FEPCA does not violate the Equal Protection Clause.  The Court therefore must grant Defendants' motion for summary judgment, and will deny Plaintiffs' motion for summary judgment.

**IV.  CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment (Doc. #82/#86) is hereby DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (Doc. #80) is hereby GRANTED.  Judgment is hereby entered in favor of Defendants and against Plaintiffs.

DATED:  January 30, 2008

_____
PHILIP M. PRO[2]
United States District Judge

---

[2]   United States District Judge for the District of Nevada, sitting by designation.